The next case on the docket this morning, Consolidated Cases 23-3332 and 23-3483 Eastern Missouri, International Association of Sheet Metal, Air, Rail, and Transportation Workers v. K.C. Southern Railway Company Richard Pins, K.C. Southern Railway Company The matter before the Court is narrow. The enforcement improperly exercised subject matter jurisdiction to interpret an award that should properly have been remanded to the NRAB as a minor dispute under the Railway Labor Act. K.C. Southern submits that the answer should be given in the affirmative, the matter should be reversed, and the matter sent to the expert, the National Railway Adjustment Board. Let me start here so we're clear. K.C. Southern Railway does not dispute that district Critically, however, that duty to enforce is neither a duty nor license to interpret an award. That language comes directly from the Seventh Circuit. Counsel, before you get much further, can you tell us the impact of your September 11th letter to the Court which attached an April 2024 order by the Adjustment Board? Yes, thank you, Your Honor. Critically, it does not moot this matter, but it does Does it moot it with respect to that issue? It does moot it with respect to the sole issue of whether or not we need to make a back payment award. Yes, the expert, the NRAB, has decided that and we have paid that amount to the grievant. Beyond that, however, it does not strip this Court of So beyond that, so what, are we just talking about the vacation pay? At its core, we're talking about whether or not the district court had subject matter jurisdiction to interpret these awards. And that is critical because we are, yes, Your Honor, talking about vacation pay because it was neither the district courts nor this court's province to interpret what the NRAB meant by its award, which is where the vacation pay and the offset issues arise. Beyond that, we're also talking about the fact that because the district court did not have subject matter jurisdiction to interpret the award, the district court did not have subject matter jurisdiction to enforce what was left of the award. Therefore, the Union should not have prevailed. Therefore, there should not have been an attorney's fees award, which is the second matter on appeal. That attorney's fees award, Your Honor, is born directly out of the fact that the district court deemed the improperly deemed the Union the prevailing party. But when we're looking at your argument, you're saying the back pay issue is mooted. So are we acting as if the district court did not address that? And so now we're just looking at the vacation pay analysis of the district court's opinion? No. It's our position that the district court should never have addressed either the back pay or the vacation pay awards. What if the district court had just addressed the back pay issue and then we got the April 2024 adjustment board letter? Where would we be if we didn't have the lingering, putting aside the attorney's fees issue, but where would we be as sort of a substantive matter? If they had also addressed the vacation? Let's say, yeah. They addressed it both? That's what they addressed them both. I think we would still be here, Your Honor, seeking reversal because of the precedent set by the district court exercising subject matter jurisdiction. And my understanding of the law is that questions about subject matter jurisdiction are always ripe for raising straight through appeal, including on appeal for the first time. That's not what happened here, but my understanding is that subject matter jurisdiction, the lack thereof is a bar to a court exercising jurisdiction over a matter. Therefore, we should be here to address that issue as well. And then your relief would be the attorney's fees? Yes. What if there weren't attorney's fees? You're still saying that that's something, their subject matter jurisdiction is something you would have appealed? I'm saying my client would have had to think long and hard about whether or not it wanted precedent out there that a district court granted or enforced an award under the guise of interpretation, or interpreted award under the guise of enforcement. Thank you, Your Honor. Other than as to the attorney's fee issue? Maybe we're beating a dead horse. First of all, the vacation issue was not addressed by interpretation number one. So there were two issues over which the parties had bonafide disputes. Because we had sent them to the NRAB, the NRAB issued this award. Unfortunately, the NRAB only issued an award on the back pay piece. As it would stand right now, Your Honor, if this award were to stand, this court would be further saying we are required to pay vacation. So that is not mooted. And then we have the attorney's fees piece as well. You said, unfortunately, they didn't address it. Was it raised to the adjustment board or did the carrier just bring the back pay? My apologies. At the time, it was not raised to the adjustment board because it had not arisen by the time we sought this because it dealt with 2022 vacation being awarded in 2023. And I don't know if you want me to go into a little more depth on that. I assume somebody sought interpretation one. And I guess the question is, has anybody sought interpretation two, which would deal with the vacation? Not as I understand it yet, no. The parties have tried to informally resolve the matter, which is what is often preferred, but it has not, the parties have not sought, neither has sought interpretation number two, which would deal with vacation. I am a little curious. Why did it take seven, eight months to get this to the court? To get interpretation one issued in April and given to us in September. In part, because we were trying to resolve the matter between April and when we sent it to you, I believe in early September, two weeks ago. As a matter of trying to negotiate in this, I guess I'm asking to get put this in context. Are we talking about just the vacation pay that is owed him the year following or the year he came back and whether he had enough days to earn two weeks? Are we talking about two weeks of vacation? Is that what's at issue here? I think it might be more than that. But yes, it is. That's exactly what the question is. Whether or not he had enough days worked to earn vacation for 2023. And so that's what the parties couldn't work out? Well, that and the attorney's fees piece. Your honors, as I stated, the courts have clearly said that the district court does not have the right or duty to or license or duty to interpret a minor dispute. Where there is a minor dispute, the experts, the NRAB are to handle it. That is black letter law falling out of ConRAM. The burden of establishing that the dispute is minor is minimal. Now, according to ConRAM, the dispute needs to be non-frivolous, not obviously insubstantial. Courts have used other terms such as reasonable. There can be no doubt in this case that the disputes are non-frivolous. In fact, we would submit they're meritorious. Interpretation number one has come out and disagreed with us. However, they are rooted not in a hope or not in an effort by the Kansas City Southern to avoid the award, but in real contract language and past practice. As noted, in terms of the back pay award, the past practice with awards written exactly like this one has been to include an offset. With respect to vacation, where employees are reinstated, they must work the requisite number of days. In this instance, the district court said the award was clear on its face. But in order to get to saying the award was clear on its face, the district court had to and went ahead and interpreted it. Let me explain briefly. The district court acknowledges the major-minor dispute distinction. Distinction. The district court does a nice job of setting forth the party's bonafide dispute over both issues. In doing so, the district court also points to the fact that we have pointed undisputedly to the CBA and past practice. But a dispute about, I think as some courts have recognized, a dispute about the CBA is different than whether once you get it, get something in an award, whether the award itself is clear. Yes, except that in the RLA context, Burlington Northern specifically says disagreement about the meaning of an award is a disagreement about the meaning of the underlying CBA. There are cases we've cited to wherein they say where it is required to look to the CBA to interpret an award, it is a minor dispute and it is to be sent back to the NRAB. To that end, the judge here, whether he calls the agreement clear on the face or not, absolutely interpreted the award. Sorry, whether he calls the award clear on its face or not. He absolutely interpreted the award. With respect to the back pay issue, what he did was point not to the language of the agreement as much as an informal interpretation, an informal communication offered by the arbitrator, wherein the arbitrator said, well, I didn't intend to give a windfall award, but the claim sought no offset, so my claim is sustained means no offset. That informal communication was not interpretation number one. That was the party's effort to try to initially seek some guidance from the NRAB. In terms of the vacation, the judge said, any fair understanding of the word restore benefits must include vacation. According to whom? Not according to our collective bargaining agreement, not according to our past practice. Our past practice specifically says that that is not a benefit to which you're entitled unless you worked 140 days. Your honors, I see I'm running out of time, so let me conclude with this. The burden is light to show that there is a dispute, a non-frivolous dispute. The law is clear. We did not manufacture these disputes. It appears that the district court shifted the burden to us to prove we didn't manufacture when the burden is light to prove we have a reasonable dispute. That is what we had, and therefore, we ask you to reverse. Thank you. Thank you, Mr. Vance. Good morning. Sean McKinley for Appellee Smart TD. May it please the court. I wanted to start first with a little bit of the factual background just to go over because it's important in this case. The award in question went to arbitration. The claim had very specific language. The claim was paid for all time lost without any deduction for outside earnings and also included full benefits restored. The claim was sustained. What happened afterwards is KCS, the appellant, asked for proof of Mr. Smith's outside earnings to deduct those earnings from the amount of back pay. The union, of course, filed suit because it's not in compliance with what the award said. I want to go in touch on specifically the informal interpretation request. The parties did disagree, I suppose, on what the award said, but the neutral, first of all, didn't say it wasn't his intent to issue a windfall award. He said, even if it was my intent, the language of the claim, the sustained claim is clear. I sustained the claim in full, so that's the end of the matter. That goes to KCS's other arguments that they've made, that claim sustained is vague. You hear it right from the arbitrator's mouth, what claim sustained means. And I understand that that's informal and there was a subsequent formal interpretation that we'll talk about, but the district court, in looking at this case, this was a factual attack on the court's jurisdiction, right? A KCS submitted affidavit. I think it was 35 pages total. They introduced a bunch of materials, including statements from labor relations officer at KCS. The union also responded. So when Judge Limbaugh is looking at this case, he's faced with a factual attack on his jurisdiction, he's looking at the record. It's not a surprise that looking at that record, that those facts weighed into his analysis of the award. KCS raised these issues to the court. It's not a surprise that he would look at what the neutral said about the issue of back pay and take that as it has some value as far as to the merits of what KCS is arguing. And also what Judge Limbaugh said is that vacation is necessarily included in any understanding of benefits, okay? What he says before that, though, is full reinstatement operates to act as if Smith had continued to be employed and to return him to the- Let me ask you about that. Yes, sir. When you say full benefits, where would one look to determine what benefits are due? Well, there- The CBA, right? Well, there were, yeah, certain aspects of the CBA, yeah, and then there would be other documents that are related to those. So the CBA, as I understand it, essentially says you've got to work a certain number of days or hours or something the prior year before you're eligible for vacation. And so isn't it at least ambiguous whether you go and apply the CBA and you determine whether the person worked the prior number of hours in giving full benefits, because that's what the benefits of the CBA says, versus, well, I really intend that you get credit for the time that you were wrongfully not allowed to work and therefore getting your full two weeks vacated, whatever it happens to be. Doesn't that require an interpretation of the CBA and doesn't that make it a minor dispute here? I don't agree that it requires an interpretation of the CBA. This is an arbitration award. It's remedial. It's meant to put the claimant here, Mr. Smith, put back in the position as if he had never been fired. If he had never been fired, he worked. Does it say that? Well, Judge Limbaugh says it is. Right. That might be Judge Limbaugh's take on it, but that's an interpretation, isn't it? I don't agree that it's an interpretation of the collective bargaining agreement. I think when you look at what the award says, it says full benefits, then claim is sustained. But that's my point. That's ambiguous, at least in my mind, with respect to vacation. How do we know what the full benefits means without interpreting the collective bargaining agreement provision as to how you calculate vacation? Well, you can look at what the collective bargaining agreement says about calculating vacation, but the fact is that Mr. Smith, I mean, the facts are important in this case. Mr. Smith was fired. He was not working for KCS, so of course he did not work the requisite days to get vacation for 2023. I don't think it requires an interpretation of the CBA. Isn't it at least possible that since he didn't work the requisite number of days, perhaps wrongfully, that if one goes and applies the CBA as written, he doesn't qualify for vacation? He might get his health insurance and all the other things that when he's reinstated, he'd be entitled to under the CBA. But isn't it at least ambiguous that that full benefits necessarily means he gets vacation as if he had worked? Well, Your Honor, I think we'll disagree on that because labor arbitration is meant to put the employee in the position as if they had never been dismissed, and Judge Limbaugh recognized that, and that's the case here. So I don't agree that there's ambiguity. I understand your point with what you're saying with respect to what the CBA says, but what the CBA says is not relevant as opposed to what the award says, and the award puts him in that position. But the award doesn't say, my intent is to make sure you're put in the same position you were as if you'd never been terminated. It says full benefits restored. What does the word restored do there? Does that fully answer Judge Grunder's question, or could it just be restored for the future? You're still on track with your benefits. Well, restored is, not to beat a dead horse from my end, but is that you put him in the position, his benefits are restored. There are a lot of benefits that are involved under the Railway Labor Act employees who work under these collective bargaining agreements. Vacation is one of them. Health insurance also goes back retroactive to the date they were fired. The health insurance will go back and pay any claims that were unpaid. I mean, there's a lot that goes into it that's not part of the record here. Well, that one did say reimbursement for any expenditures for health and welfare incurred and any COBRA payments. Well, right. So that did get specific as to, or more specific as to the health benefits. It's more specific, I suppose, yes. That language, but I take your point though. But as I would hope to address the question as least as best I can, but the issue is we're talking about this vacation piece. And I would also like to talk about the interpretation here when we're done with this part because I suppose we're moving on in time and I'd like to address some of the things that Mr. Pinn said about that. You had asked the question of vacation. Does the interpretation move this case? I think that certainly the argument could be made that it does. That the interpretation says the carrier's questions answered in the negative, but I also acknowledge that the interpretation did not specifically address vacation like it specifically addressed back pay. Mr. Pinn said that neither parties requested a clarificate or interpretation again. Well, the union's not of the opinion that the award requires an interpretation. So of course, to explain a little bit of the background of the interpretation process, just to provide some clarity, the questions are submitted. There's some briefing. The arbitrator issues a draft opinion. It's circulated to the parties and then it's adopted, what they call an adoption session is adopted. So this interpretation was sent out to the parties. KCS was aware. It did not address the vacation question. They still allowed it to be adopted. They still have not requested another interpretation. And that kind of goes to the point we've tried to make in this case is that there's bona fide disputes and then there's attempts to just pick apart every part of the relief. And that's what we're dealing with here, in my opinion. You saw it with the back pay. The award, the claim can't be any more clear. The informal interpretation comes. He says, I said claim sustained. That means the whole of the claim. They still go for an interpretation. Now we're at this interpretation. Now, this case is still not resolved. We're over two years from when the award came out. And courts have admonished carriers for that exact same thing, grudging attempts to keep relief at a minimum. And I think that's something that hangs over this case. And I bring it up within the context of the interpretation because it still continues. If this case is, if the district court is vacated and remanded, we're still who knows how long out from being able to resolve this issue. Are there any other questions about the interpretation and its effect? Well, I assume if that was true, you'd have to go get another interpretation on the vacation pay question. An interpretation of the interpretation, I suppose. But it would be the issue of vacation. I understand that. Is there an interpretation on the vacation pay? Well, the union's opinion is that there's not. There's not any need for it. Well, I'm sorry. You just said an interpretation of an interpretation, which implies there's already an interpretation on the vacation pay question. There is not on vacation. No. The only interpretation that exists is that interpretation one, which specifically addresses vac pay but doesn't specifically address vacation. So in the event this were, the court were to decide that this needed to go back for an interpretation, you know, it would need to be done that way. I wanted to raise, I suppose, a point that Mr. Pins brought up. I'm sorry, dude. Okay. I wanted to bring up a point that Mr. Pins raised about where he says that Judge Limbaugh was interpreting the award when he said that it was clear on its face. When he says when it's clear on its face, it means that he must have been interpreting it. A lot of this case involves the, as Judge Posen put it, the tension that exists in the Railway Labor Act between the jurisdiction of arbitration boards and the rights of parties to have awards enforced in court, right? There is an obvious tension there and you see it in this case is a great example, I think, of that tension that exists. To the point about Conrail, and this is important, Conrail was a Supreme Court case that sets a standard for major-minor dispute. I'm in-house counsel with the labor union. I know Conrail very well and I've litigated Conrail many times. One thing of import from Conrail, though, is that, and I don't think I expressed this clearly, I think, in the briefing that we did, but I have a chance to bring it up here. One point in Conrail is the court was looking at a dispute over drug testing. Can the carriers require drug testing as a condition of employment? Long story short, the carrier said, we require medical testing. This is similar to that. The court said, okay, that's enough to make this a minor dispute. Go arbitrate it. It's not a major dispute. The progeny from Conrail, as Mr. Pins points out, doubts are resolved in favor of finding a minor dispute, but that's in the major-minor context. That's when the alternative is if it's not a minor dispute, it's a major dispute. Major disputess lead to disruptions to interstate commerce. A couple years ago, we were in a situation where we were in a major dispute that made national news. This is different. The context is there's a question of is it a bona fide interpretive question? Does it actually require interpretation? The award itself, does it require an interpretation? Versus is the award unambiguous such that it can be enforced? Judge Posner mentioned about the infinite regress of you have an award, it's claimed that it's ambiguous, it goes back. Again, you claim it's ambiguous. That's the infinite regress. I would say that we're in the infinite regress right now. We are almost two years into this litigation. Mr. Smith was fired in 2018. It's four years almost for an award to come out. He has been reinstated. He does have some back pay, but there's a little bit of a dispute that's not relevant to this court. But we're in the regress now. And if this court will not affirm the district court, we go back for another interpretation, which opens the door for, well, this is also ambiguous, or this doesn't address this question. And it goes on and on and on. Eventually, a court has to be able to look at an award and say, this is clear on its face. Because Mr. Pinn says that just by doing that, you're engaging in an interpretation. Well, then when can a court enforce an award under the RLA? There has to be a point where a court can sit there and say, yeah, this is unambiguous. I can enforce this award. Otherwise, it's only at the agreement of the parties to do so. And that's what Judge Limbaugh was doing here. In my opinion, he was looking at the overall facts and what could be said, and made a determination that it was unambiguous. I guess I'm almost out of time. I would ask that one point, if this is going to be, in the event the court decides to vacate, that it remains at the district court. Because August 25th was the date of the award two years ago. We're already past the statute of limitations. The union would not be able to refile a petition to enforce the award if this is remanded. I understand. So that would be my one request, is that it remains at the district court and is just remanded to the board, instead of being dismissed as the carrier asks. Thank you. Thank you, Mr. Pins. You have six seconds. I'll give you a minute if you've got something you really want to say. I'll use my six seconds to say the expressions that I've heard about. Very well, thank you. Thanks to counsel for their appearance and arguments. Case is submitted, and we'll issue an opinion when we can.